# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Lynchburg Division

| | |
|---|---|
| LINNIE SNEAD, <br><br>    Plaintiff, <br><br>v. <br><br>221 SOUTH AUTOMOTIVE, INC., d/b/a U-Ride Today, Lynchburg Mazda; and <br>CREDIT ACCEPTANCE CORP. <br><br>    Defendants. | Case No.: _____ <br><br>**JURY TRIAL DEMANDED** |

**SERVE:**
221 South Automotive, Inc.
c/o Registered Agent, Mr. Christopher Mabry
18576 Forest Road
Forest, VA 24551

Credit Acceptance Corporation
c/o Registered Agent, Corporation Services Co.
11 S. 12th Street
P.O. Box 1463
Richmond, VA 23218

## COMPLAINT

## INTRODUCTION

Plaintiff, Ms. Linnie Snead, by counsel, brings this action for violations of the federal Equal Credit Opportunity Act (ECOA). Congress found a need to ensure extensions of credit would be made with fairness and impartiality and that "[e]conomic stabilization would be enhanced and competition . . . would be strengthened" through the enactment of the ECOA. The ECOA requires creditors to provide a detailed notice of adverse action under the ECOA as a defense against discriminatory and unfair denials of credit. Defendants failed to provide any written statement of the reasons for Ms. Snead's denial of credit. Rather, Defendants provided a false approval letter to Ms. Snead and verbal misrepresentations that she was approved for credit and owned the vehicle.

1

Defendants committed fraud and violated the Virginia Consumer Protection Act, Va. Code Ann. Section 59.1-198, *et. seq.*

## PARTIES

1. Plaintiff, Ms. Linnie Snead, is a natural person and resident of Lynchburg, Virginia and is a consumer under the ECOA.

2. Defendants 221 South Automotive, Inc., dba Lynchburg Mazda, U-Ride Today ("U-Ride") and Credit Acceptance Corporation ("Credit Acceptance") conduct business in Lynchburg and throughout Virginia.

3. Defendants are creditors within the meaning of the ECOA, 15 U.S.C. § 1691a(e) (2011) and 12 C.F.R. ("Reg. B") § 202.2(*l*) (2011).

4. Defendants are suppliers within the meaning of the Virginia Consumer Protection Act ("VCPA"), Va. Code Ann. § 59.1-198 *et. seq.*

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1691e(f) (2011) and 28 U.S.C. § 1331 (2011).

6. This Court has supplemental jurisdiction over Ms. Snead's state law claims pursuant to 28 U.S.C § 1367(a) (2011).

7. Venue is proper in the Western District of Virginia, Lynchburg Division under 28 U.S.C. § 1391(b) (2011).

8. The Court has authority to render declaratory judgment pursuant to 28 U.S.C. § 2201 (2011).

## FACTS

9. Ms. Snead is an individual working at Braley & Thompson, Inc. as an office manager and provides care for her son and niece.

10. Ms. Snead went to U-Ride Today to look into purchasing a vehicle because she needed a more reliable vehicle.

11. Nilda LeBron was the sales person that initially spoke with Ms. Snead and worked with her on her first visit on or about January 28, 2010.
12. Ms. Snead walked into the office after a cursory look at the inventory on the lot.
13. She informed Nilda and the other employee that she was in a bankruptcy and wanted to purchase a vehicle.
14. Nilda did a search on the dealer's website to tell her what might be in her price range.
15. Ms. Snead's husband was with her at the time of the visit to U Ride.
16. Ms. Snead saw a Ford Taurus wagon that she might be interested in purchasing.
17. Ms. Snead completed some paperwork at the initial visit.
18. Ms. Snead completed a credit application or an application for financing and provided her pay stub and driver's license to Nilda.
19. Ms. Snead was told that she would need a down payment of approximately $1600 and she would receive $1000 for her trade in.
20. Ms. Snead wanted to think about the deal and left U-Ride.
21. Ms. Snead returned to U-Ride to test drive the vehicle during the week of February 7, 2010.
22. She returned to U-Ride on or about February 12, 2010 for a third visit to purchase the vehicle.
23. Ms. Snead gave U-Ride the down payment of one thousand six hundred twenty five dollars ($1625.00) by using her bank card.
24. Credit Acceptance reviewed Ms. Snead's credit history on January 29, 2010, February 2, 2010 and March 18, 2010.
25. Ms. Snead spent approximately two hours at U-Ride on the first visit on or about January 28, 2010.
26. On her second visit during the week of February 7, 2010, Ms. Snead test drove the vehicle and spent approximately one or two hours at U-Ride.

27. Ms. Snead was presented with a series of documents on her third visit at the time of the purchase on or about February 12, 2010.
28. Ms. Snead signed a GAP insurance agreement on February 12, 2010, attached as **Exhibit A**.
29. Ms. Snead entered into a Buyer's Order on February 12, 2010, attached as **Exhibit B** which is incorporated in full as if recited herein.
30. Ms. Snead purchased a 2003 Ford Taurus wagon, VIN 1FAFP58U63A260868 ("the vehicle"), because the employee of U-Ride presented her with a completed Retail Installment Sales Contract (RISC), attached as **Exhibit C**, and both parties signed the contract.
31. U-Ride issued temporary tags for the vehicle on February 12, 2010.
32. U-Ride is the listed as the creditor-seller on the RISC.
33. The RISC states: "You agree to buy and Creditor agrees to sell the following vehicle."
34. The RISC states that "the Seller has assigned this Contract to Credit Acceptance Corporation" and Ms. Snead is instructed to make all future payments to Credit Acceptance.
35. GAP insurance was obtained through U-Ride from Western Diversified for $499.00.
36. An extended warranty was purchased for $1300 from a third party through U-Ride.
37. Ms. Snead contacted her insurance company and had insurance placed on the vehicle on February 12, 2010 through GMAC Insurance.
38. Ms. Snead contacted employees at U-Ride multiple times after the purchase to inquire about permanent tags and was told that the tags were not yet ready.
39. On March 13, 2010, U-Ride issued a second set of temporary tags to Ms. Snead for the vehicle.
40. An undated letter with Credit Acceptance letterhead was sent to Ms. Snead informing her that she had been approved for credit and her first payment was due March 14, 2010.

41. Ms. Snead contacted Credit Acceptance at the phone number on her approval letter to determine when she would receive the payment book and was told by and employee/representative of Credit Acceptance that there was no record of her account.
42. Ms. Snead tried to make a payment to Credit Acceptance and could not do so.
43. Ms. Snead inquired with U-Ride why she could not make a payment and was advised not to worry about the delay and that the delay would just give her more time to make the payment.
44. Ms. Snead was contacted by Nilda, an employee at U-Ride, on March 13th and told that she needed to sign additional paperwork, approximately eight documents, including but not limited to, paperwork to add a GPS monitoring system and a DMV power of attorney form.
45. Nilda informed Ms. Snead not to date any of the paperwork presented at the visit to U-Ride on March 13, 2010.
46. Ms. Snead dated one document on March 13, 2010 and Nilda destroyed it and gave Ms. Snead another document to sign without a date.
47. At no time before or during the meeting of March 13, 2010 was it mentioned that there were problems with the credit approval or the purchase of the vehicle.
48. Employees of U-Ride regularly conducted themselves as if the credit had been approved and Ms. Snead owned the vehicle.
49. Wayne Clark, an employee of U-Ride was also present when Ms. Snead returned to sign additional paperwork.
50. Ms. Snead was informed during her visit of March 13, 2010 that the former manager was no longer with U-Ride.
51. Ms. Snead was contacted in late March 2010 by Nilda who told her that the financing did not "go through" and she would need to sign new paperwork to get it approved.
52. Ms. Snead was told that she was not approved for the amount originally financed, she was denied for that amount and U-Ride would need to re-write the financing paperwork.

53. An employee of U-Ride requested that Ms. Snead put additional money down on the transaction.
54. Another employee wanted to change the deal to exclude the warranty from the purchase.
55. Ms. Snead returned the vehicle on April 6, 2010 because she could not pay more cash down and did not want to remove her warranty.
56. Ms. Snead included a letter to U-Ride when she returned the vehicle. In her letter she explained that she was denied, turned down for financing or it otherwise did not go through.
57. U-Ride returned a portion of her down payment and arranged for her to pick up her trade-in vehicle.
58. Later, U-Ride returned the remaining $500 down payment to Ms. Snead.
59. Ms. Snead incurred expense and inconvenience retrieving her trade-in vehicle and returning the vehicle.
60. Ms. Snead cancelled the insurance she placed on the vehicle.
61. Ms. Snead suffered embarrassment, mental anguish and loss of credit rights. The fact of her credit denial was known to her co-workers, family and friends because the vehicle she had for two months was now gone.
62. At no time did Ms. Snead receive written notice stating the reason or reasons for the credit denial.
63. The only written communication she received regarding the credit application was an undated letter with Credit Acceptance letterhead stating that she was approved for credit.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

#### Equal Credit Opportunity Act

64. Paragraphs 1 - 63 are incorporated as if set forth fully herein.

65. Title 15 U.S.C. § 1691(d) requires that a creditor provide written statement of the reasons for adverse action regarding credit to a consumer within thirty (30) days after receipt of a completed application. 15 U.S.C. § 1691(d) (2011); see Reg. B. § 202.9(a)(1), (a)(2) (2011).

66. An adverse action as defined under ECOA is "a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." Reg. B § 202.2(c)(1)(i) (2011).

67. The defendants took adverse action regarding Ms. Snead's application for credit.

68. The defendants failed to provide Plaintiff any written or other statement of reasons for the adverse action in violation of the ECOA.

69. The defendants gave Ms. Snead a false notice of approval for credit.

70. Alternatively, defendants gave credit to Ms. Snead and subsequently revoked and/or terminated the credit.

71. As a result of the ECOA violations, Ms. Snead has suffered substantial actual damages in the loss of her rights to determine the basis for credit denial, to the extent she could have remedied the problem if she had received a proper notice, then loss of credit damages, frustration, anger, humiliation, fear, embarrassment and other emotional and mental anguish.

72. The violations of the ECOA entitle Ms. Snead to damages, under 15 U.S.C. § 1691e(b), of $10,000.00 against each defendant, actual damages and reasonable attorney's fees and costs. 15 U.S.C. § 1691e(b), (d) (2011).

73. Ms. Snead is entitled to equitable relief against Defendants requiring delivery of compliant notices in all future instances.

## SECOND CAUSE OF ACTION

### Virginia Consumer Protection Act

74. Paragraphs 1 – 73 are incorporated as if set forth fully herein.

75. The Virginia Consumer Protection Act ("VCPA") prohibits certain actions and behaviors in connection with a consumer transaction. Va. Code Ann. § 59.1-200(A) (Michie Supp. 2010).

76. Defendants are suppliers within the meaning of the ("VCPA"). Va. Code Ann. § 59.1-198 (Michie Supp. 2010).

77. Defendants used "deception, fraud, false pretense, false promise or misrepresentation." Va. Code Ann. § 59.1-200(14) (Michie Supp. 2010).

78. When Ms. Snead inquired about the delay in receiving her license plates, she was told by Defendant U-Ride that the tags were not ready yet, which misrepresented and made a false promise of the status of the sale and title.

79. Through consistent conduct, the defendants deceived and misrepresented to Ms. Snead that the sale had been completed and Ms. Snead indeed owned the vehicle.

80. Defendants' violation of the VCPA was willful.

81. Defendants' violation of the VCPA entitles Ms. Snead to actual damages, statutory damages. Va. Code Ann. § 59.1-204 (Michie 2006).

## THIRD CAUSE OF ACTION

### Fraud

82. Paragraphs 1-81 are incorporated as if set fully herein.

83. Defendants made a false representation to Ms. Snead that she was in fact approved for credit and she owned the vehicle. This was done by letter and through the course of conduct of Defendants for nearly two months.

84. The misrepresentation was a material fact that the vehicle was purchased and financed and the vehicle belonged to Ms. Snead.

85. Defendants made the false representation intentionally and knowingly with the intent to mislead.

86. Alternatively, Defendants did not make the false representation with intent to mislead, but made the misrepresentation negligently or innocently, yet caused damage to Ms. Snead.

87. Defendants could had have found a company to purchase the financing paperwork, but instead sought to get more favorable terms for the sale of the financing paperwork.

88. Ms. Snead reasonably relied upon the misrepresentation and purchased insurance for the vehicle, used the vehicle as her own, told her family and friends about the purchase and suffered embarrassment and humiliation as a result of the fraud.

89. Ms. Snead acted in reliance on the false representations.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Ms. Linnie Snead, by counsel, prays that this Court:

1.  Assume jurisdiction of this case;

2.  Issue a declaratory judgment that U-Ride violated the ECOA;

3.  Issue a declaratory judgment that Credit Acceptance violated the ECOA;

4.  Award her actual damages and 15 U.S.C. § 1691e(b) damages of ten thousand dollars ($10,000.00) from each defendant, in accordance with the ECOA, 15 U.S.C. § 1691e;

5.  Award costs under the ECOA;

6.  Issue a declaratory judgment that U-Ride and Credit Acceptance willfully violated the VCPA, alternatively that the VCPA violation occurred but was not willful;

7. Award actual and statutory damages in accordance with the VCPA for Defendants' willful violation of the VCPA;

8. Issue a declaratory judgment that Defendants committed actual fraud or, alternatively, that Defendants committed constructive fraud, and award actual damages and punitive damages;

9. Award reasonable attorney's fees; and

10. Award such other relief as the Court deems appropriate.

## JURY TRIAL DEMAND

Plaintiff hereby demands a jury trial in accordance with Federal Rules of Civil Procedure Rule 38.

Respectfully submitted,

LINNIE SNEAD

By Counsel

   /s/ Jeremy P. White      
Jeremy P. White, Esquire
Virginia Legal Aid Society, Inc.
PO Box 6200
513 Church Street
Lynchburg, VA 24505
Phone: 434.846.1326
Fax:    434.846.3826
SBN:   48917
jeremyw@vlas.org
Counsel for the Plaintiff

Amber R. Jordan, Esquire
Virginia Legal Aid Society, Inc.
PO Box 6200
513 Church Street
Lynchburg, VA 24505
Phone: 434.846.1326
Fax:    434.846.3826
SBN:   76895
amberj@vlas.org
Counsel for the Plaintiff